```
       IN THE UNITED STATES DISTRICT COURT
     FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

MONET BEY, et al.              :      CIVIL ACTION
                               :
        v.                     :
                               :
CITY OF PHILADELPHIA, et al.   :      NO. 10-635

MEMORANDUM

Dalzell, J.                                December 21, 2010

Monet Bey, a minor who was eight years old at the time of the incidents giving rise to this lawsuit, and her mother, Elizabeth Bey, sue defendants the City of Philadelphia (the "City"), the Philadelphia Police Department ("PPD"), Police Officers John and Jane Doe (during discovery these two were identified as Officers Troy Ragsdale and Krystal Thornton), the Pennsylvania Society for the Prevention of Cruelty to Animals ("PSPCA"), and Michelle A. Hodges. The action arises out of an accident in which a stray dog chased Monet Bey into the street and Hodges's car then hit her.

On June 14, 2010 we entered an Order in which we granted PSPCA's motion to dismiss Counts II and V of the Complaint with prejudice. Thus, the only remaining claims are one for a 42 U.S.C. § 1983 violation against the City, the PPD and the two officers (the "City Defendants") (Count I), a state law negligence

and gross negligence claim against the PSPCA (Count III), and a state law negligence claim against Hodges (Count IV).

The City Defendants have moved for summary judgment on the § 1983 claim, as has the PSPCA on the negligence claim. The Beys responded to the motions for summary judgment and <u>then</u> moved to amend their complaint. We will address these motions here.

## I. **Factual Background**

At about 3:00 p.m. on August 22, 2009, Police Officers Krystal Thornton and Troy Ragsdale responded to a "vicious dog" call in the area of the 2600 block of South 66th Street in Philadelphia, Pennsylvania. The City Defendants' Motion for Summary Judgment ("Def. MSJ"), Ex. D at 6:18-7:17, Deposition of Officer Troy Ragsdale. When the officers arrived, they observed a stray dog that did not appear to be vicious. <u>Id.</u>, Ex. E. The officers fed the dog and placed it in a fenced area in front of a home on that block. <u>Id.</u>, Ex. F at 6:7-20, Deposition of Officer Krystal Thornton. This house was not the residence of either plaintiff. The officers notified dispatch through police radio that the dog was in the yard and that the PSPCA or Pennsylvania Animal Care and Control Association should be called "to come get the dog". <u>Id.</u> at 7:18-19. The officers did not observe the dog

2

growl, bark or run.  Id., Ex. D at 20:14-21; Ex. F at 44:24-45:13. The officers then prepared the necessary paperwork and returned to their patrol duties.

Plaintiff Monet Bey was outside jumping rope on the 2600 block of South 66th Street when the officers placed the dog inside the fenced-in-yard and shut the gate.  Officer Thornton approached Monet and her friends and told them to stay away from the dog. Id., Ex. B at 48:24-49:12, Deposition of Monet Bey.  After the officers left, the dog escaped the enclosed yard and began to roam the neighborhood again.  At about 6:15 p.m., Monet saw the dog and, afraid that it would bite her, ran into the street where a passing car driven by Michelle Hodges ran over Monet's foot, causing extensive damage to it.  Id., Ex. B at 28:22-29:8; Ex. C at 9:16-19, Deposition of Elizabeth Bey.  Plaintiff Elizabeth Bey was inside her home when the accident happened.  Id., Ex. C at 5:14-17.  A neighbor knocked on Ms. Bey's door and told her about the accident, at which time Ms. Bey immediately went to her daughter, who was lying on the street between two parked cars with her foot wrapped in a towel.  Id. at 7:16-9:19.  Ms. Bey did not learn about the loose dog or the officers until she was at the hospital with Monet.  Id. at 38:23-39:2.

## II. **Analysis**[1]

The Beys contend that the City Defendants violated Monet's substantive due process rights under the Fourteenth Amendment. The Beys seek relief pursuant to 42 U.S.C. § 1983 for a violation of their substantive due process rights under a theory of state-created danger.

The City Defendants move for summary judgment. First, they argue that plaintiffs have failed to establish the deprivation of a right secured by the Constitution pursuant to the Fourteenth Amendment because the Beys cannot establish a substantive due process violation under a theory of state-created danger. The City Defendants contend that (1) Monet's accident was not a foreseeable or fairly direct consequence of the officers' action of locking the dog in a fenced yard, (2) the actions of the officers do not shock the conscience, (3) Monet was not a foreseeable victim or a member of a discrete class, and (4) the

---

[1] Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Whenever a factual issue arises which cannot be resolved without a credibility determination, the Court must credit the non-moving party's evidence over that presented by the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

4

affirmative acts of the officers did not render Monet more vulnerable that she would have been if the officers had not acted. Second, the City Defendants argue that plaintiffs cannot satisfy their burden of proof under <u>Monell v. Dep't of Social Services</u>, 436 U.S. 658 (1978), and its progeny to hold the City liable for Monet's injuries.

### A. **The § 1983 Claim**

Section 1983 does not create substantive rights but provides a remedy for the violation of federally created rights. <u>Groman v. Township of Manalapan</u>, 47 F.3d 628, 633 (3d Cir. 1995). To establish a <u>prima facie</u> case under § 1983, plaintiffs must demonstrate that (1) the officers deprived them of a federal right, and (2) they acted under color of state law. <u>Id.</u> The first step in evaluating a § 1983 claim is to "identify the exact contours of the underlying right said to have been violated" and determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 841 n.5 (1998).

Here, plaintiffs invoke the substantive component of due process, which "protects individual liberty against certain government actions regardless of the fairness of the procedures

5

used to implement them." Collins v. City of Harker Heights, Tex., 503 U.S. 115, 125 (1992)(internal quotation marks omitted). A State's failure to protect an individual against private violence does not usually constitute a violation of due process. Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000) (citing DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 195 (1989)). "There are two exceptions to this rule: the 'special relationship' exception and the 'state-created danger' exception." Nead v. Union County Educational Services Comm'n, No. 09-2589, 2010 WL 1768559, at *3 (3d Cir. May 4, 2010).

The "state-created danger" exception provides for liability where the State affirmatively causes the harm or made the victim more vulnerable to an existing harm. Id. To establish a claim for state-created danger liability, a plaintiff must establish that "a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006)(emphasis added).

There are four essential elements of a meritorious "state-created danger" claim: (1) the harm was foreseeable and fairly direct, (2) a state actor acted with a degree of

6

culpability that shocks the conscience, (3) a relationship existed between the state and the plaintiffs such that the plaintiffs were the foreseeable victims of the defendant's acts, or members of a discrete class subjected to the potential harm brought about by the state's actions, and (4) a state actor <u>affirmatively</u> used its authority in a way that <u>created</u> a danger to the citizen or that rendered the citizen <u>more</u> <u>vulnerable</u> to danger than had the state not acted at all. <u>Id.</u> (emphasis added).

We will address the fourth element first. Plaintiffs cite <u>Ye v. United States</u>, 484 F.3d 634 (3d Cir. 2007), to support their contention that a state actor created the dangerous circumstance that led to Monet's injury. Pl. Resp. at 39. Our Court of Appeals held in <u>Ye</u> that this fourth element has three sub-elements: (1) a state actor must exercise his or her authority, (2) the state actor took an affirmative action, and (3) the act created the danger to the plaintiff or rendered the plaintiff more vulnerable to danger than if the state had not acted at all. <u>Id.</u> at 639.

We agree that the officers were both state actors who exercised their authority when they responded to the 9-1-1 call about the "vicious dog." With regard to whether the officers took an affirmative action, plaintiffs contend that the officers

7

affirmatively acted when they "led" the dog further into the 2600 block, fed the dog, placed "the dog in a non-confining area, and label[ed] it a 'confinement' so they could leave without further attending the vicious dog." Pl. Resp. at 40-41. Plaintiffs also argue that the officers failed to act properly, and that they falsely assured block captain Larry Wilder that the dog was secured, "lull[ing] him into a sense of security." Id. at 41.

In Ye, our Court of Appeals made explicit its previous implicit holding in Bright v. Westmoreland, 443 F.3d 276 (3d Cir. 2006), that assurances do not amount to affirmative acts. Ye, 484 F.3d at 641. In addition, "no affirmative duty to protect arises. . . from the State's. . .expressions of intent to help." Id. at 640 (internal quotation marks omitted). Labeling the yard a "confinement" is effectively an assurance and thus not an affirmative act under our Court of Appeals's jurisprudence. Plaintiffs' reference to the act of feeding the dog strikes us as a red herring -- we cannot fathom how feeding the dog could have caused Monet to run into the street in front of a car. With regard to leading the dog into the yard, the testimony of Officer Ragsdale conflicts with the testimony of Officer Thornton. Officer Ragsdale testified in his deposition that Officer Thornton led the dog into the yard. Def. MSJ, Ex. D at 14:18-21. Officer

8

Thornton testified in her deposition that she followed the dog to the yard and then closed the gate once it was inside. Id., Ex. F at 6:12-17. Viewing the evidence in the light most favorable to the Beys, we conclude that the officers did take the affirmative step of leading the dog to the yard.

But the Beys' claim fails at the third step. Officer Thornton did not place Monet in any more danger by leading the dog to the yard than if she had not acted at all. Had the officers never arrived, the dog would have roamed the neighborhood. Even viewing the facts in the light most favorable to the plaintiffs -- i.e., assuming the officers did lead the dog into the yard -- the connection between Monet running into the street and the officer placing the dog in the yard is too attenuated to find that the Commonwealth created the danger. To satisfy this prong of the exception, the affirmative act must either create a danger to the plaintiff or render "the citizen more vulnerable to danger than had the state not acted at all." Ye, 484 F.3d at 642 (quoting Bright).

Our Court of Appeals noted in Ye that it had often adopted the language of "but for" causation when describing the last requirement of state-created danger liability. Id. at 642. "[T]here must be a direct causal relationship between the

9

affirmative act of the state and plaintiff's harm." Id. at 643 (internal quotation marks omitted). Monet was injured when she ran into the street trying to get away from the dog and Hodges's car then struck her. The Beys argue that but for the officers leading the dog to the yard and shutting the gate, Monet would not have run into the street and then been hit by a car. We fail to see "but for" causation in this scenario. And even if we agreed (as plaintiffs argue, Pl. Resp. at 42), that leading the dog to the yard "drastically increased the risk that the dog would try to attack or chase" Monet, increasing a risk -- "drastically" or less so -- is not the same as "but for" causation. Indeed, even on plaintiffs' view of the record, the state actors <u>reduced</u> the risk that existed when the dog strayed at will around the neighborhood.

Plaintiffs have failed to satisfy the fourth prong of the state-created danger exception. We therefore need not consider whether they have satisfied the other three prongs. But it is worth noting that the officers' actions by no means "shock the conscience" of the Court.[2] Plaintiffs thus would also not have

---

[2] Our Court of Appeals has held that to establish a violation of substantive due process rights, the action alleged must be "so ill-conceived or malicious that it shocks the conscience." <u>Miller v. City of Philadelphia</u>, 174 F.3d 368, 375 (3d Cir. 1999) (internal quotation marks omitted). Mere
(continued...)

satisfied the second element of the state-created danger exception.

   **B.   The Monell Claim**

To prevail against the City under § 1983, the plaintiffs must prove that their Constitutional rights were violated as a result of a municipal policy or custom. A § 1983 complaint against a municipality must allege (1) the existence of a custom or policy of the municipality that is of such long standing as to have the force of law, and (2) that one of the municipality's employees violated the plaintiff's civil rights while acting pursuant to this custom or policy. See Monell v. Dep't of Social Services of City of New York, 436 U.S. 658, 691-94 (1978). The Supreme Court has held that municipal liability under § 1983 only attaches when the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. . . ." Id. at 694. With regard to the Beys' Monell claim, defendants persuasively argue that the Beys cannot satisfy their

---

[2] (...continued)
negligence is not sufficient to meet this standard. Lewis, 523 U.S. at 847. The officers' actions here do not begin to shock -- or even trouble -- our conscience.

burden of proof because they cannot prove a Constitutional violation. Indeed, they add that even if plaintiffs could prove a Constitutional violation, they nevertheless cannot show that it was the result of any municipal policy, custom or practice. Def. MSJ at 14.

Because we have found that the police officers did not violate the Beys' Constitutional rights, the Beys have no colorable Monell claim. Thus, we will grant the City's motion for summary judgment.

### C. The State Law Claims

The Beys seek to amend their complaint to include the names of the officers and to bring a claim of negligence against the City and the named officers sounding in Pennsylvania law. But without the § 1983 claim against the City Defendants, no federal claim remains in this action.

A district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because we will dismiss all of the claims over which we have original jurisdiction, we may decline to exercise supplemental jurisdiction over plaintiffs' various state law claims. The

Supreme Court has stated that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); see also Borough of T. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir.1995) (quoting and discussing Gibbs).

Because we are dismissing all of the claims over which we have original jurisdiction, we find that the interests of justice and comity will be better served by declining to address the state law claims. Plaintiffs may, of course, take these claims up in the Pennsylvania courts if they wish.

Thus, in view of our action under § 1367(c), we will deny as moot plaintiffs' motion to amend their complaint and deny without prejudice the PSPCA's motion for summary judgment on the remaining Pennsylvania negligence claim against it.

BY THE COURT:


\_\_\s\Stewart Dalzell